UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PRESTON FRANCART,

        Plaintiff,

  v.                                                        Case No. 11-C-399

MICHAEL ASTRUE,
Commissioner of Social Security

        Defendant.

## DECISION AND ORDER

This is an appeal of the denial of disability benefits following a hearing before an administrative law judge (ALJ). Plaintiff, who appears *pro se*, asserts that the ALJ erred in finding him not disabled. Plaintiff does not cite specific errors the ALJ made; instead, he simply asserts that Social Security "knows I have serious medical problems and they need to start paying me." (Reply Br. at 1.) Because Plaintiff is *pro se*, however, I will review the ALJ's decision and the medical record in order to determine whether the decision was supported by substantial evidence.

Plaintiff was thirty-eight years old at the time of the hearing, standing six-feet three (or four) inches and weighing 342 pounds. A high school graduate, he was divorced and lived with his father while receiving food stamps. He had not worked in several years. Several years earlier he held jobs at a tire store and as a plumbing apprentice.

Plaintiff testified that he had essentially two conditions (one physical, one mental) that he alleged were disabling. First, although he cited a number of physical ailments, he focused on a heart

condition that occasionally gave him palpitations. On one occasion, this made him short of breath and caused him to lie down. (Tr. 29.) He also had issues with his back, but these were unspecific and based on a fusion surgery nearly two decades prior to the hearing. In addition, he testified to having acid reflux and diabetes. He testified that he could lift "probably nothing" but then conceded that maybe he could lift "a can of soup." (Tr. 17.)

Plaintiff's other principal complaint was that mentally he "just can't take [it] anymore." (Tr. 16.) Upon questioning by the ALJ, he later elaborated that he considered any kind of work, even sedentary work, to be stressful, in part because he "never really got along with people at work anyway, and I just don't think I can do it. I know I can't do it." (Tr. 19.) He testified that he was not in any therapy for this condition and did not take medication.

During the hearing the ALJ strongly hinted that the Plaintiff's testimony would not suffice to support a finding of disability. But because the Plaintiff was *pro se* the ALJ repeatedly tried to help him by encouraging him to cite *specific* reasons why he could not work. Despite the ALJ's attempt to help him, Plaintiff's testimony consisted of nothing more than conclusory assertions such as those cited above (e.g., "I don't think I can do it").

The ALJ issued a decision denying benefits. He noted that although Plaintiff had been diagnosed with a cardiac condition in 2009, there was no indication that the condition had been disabling. Moreover, since beginning treatment, the problem seemed to have ameliorated. Treatment notes indicated that Plaintiff was feeling better by January 2010 and "only rarely gets premature ventricular contractions now." (Tr. 289.) His heart was at a "regular rate and rhythm" and "he has specifically had no recent problems with chest pain, palpitations, dizziness, orthopnea, or edema." (Tr. 290.) As noted earlier, the ALJ tried to get the Plaintiff to explain more concretely

why his palpitations would be disabling, but Plaintiff did not do so. I may take judicial notice that heart palpations, and particularly premature ventricular contractions (PVCs), are a fairly common condition, and relatively few people who suffer them cannot work. As the ALJ explained very bluntly, a claimant cannot simply say he has palpitations and then expect the government to write him a check. The ALJ invited Plaintiff to explain why his heart condition prevented him from working, but Plaintiff offered no real explanation. Instead, the record demonstrates that Plaintiff's PVCs had become less frequent (or even nonexistent) and were not disabling.

The other principal issue was Plaintiff's alleged mental disability. He preferred being alone, he said, and did not like working with other people. He had not sought treatment for this, despite recognizing his condition and citing it during the hearing as a reason to grant benefits. (He cited his lack of insurance for the failure to seek treatment.) Plaintiff was referred for a psychological examination with Sandra King, Ph.D. She concluded that Plaintiff's affect was "blunted," indicating a likelihood of paranoid schizophrenia. (Tr. 227.) In her summary, she suggested that Plaintiff "might also try applying for Social Security Disability benefits, as his paranoid schizophrenia appears to be moderately disabling at this time." (Tr. 228.)

The ALJ gave this opinion little weight because it was based on a single consultation and resulted from Plaintiff's scores on a test rather than the psychologist's own observations. The ALJ was correct to do so. First, the statement that a claimant "might . . . try" applying for disability benefits is hardly a ringing endorsement of a disability finding, especially given her conclusion that Plaintiff "appears" to be "moderately" disabled by the condition "at this time." Every conclusion in the psychologist's analysis is hedged with a weakening modifier. The ALJ noted that a disability conclusion was the province of the Commissioner rather than a treating source, and thus discounted

3

the opinion for that reason as well. Instead, the ALJ credited the conclusions of the state agency psychologist who reviewed the record and found the Plaintiff not totally disabled. Eric Edelman, Ph.D. concluded that Plaintiff would be moderately limited in the ability to interact with the public or to relate to supervisors. (Tr. 281.) He further concluded that the diagnosis of paranoid schizophrenia was questionable given that Plaintiff's lack of any psychotic manifestations (voices, hallucinations, etc.) did not suggest paranoia. (Tr. 282.) Ultimately, Dr. Edelman concluded that the "main problem seems to be a lack of motivation." (*Id.*) While there were indicia of depression (although not major depression) and other mental health issues, these would only limit his function to "a certain extent, but are not totally disabling." (*Id.*) The ALJ relied on these opinions in properly making a disability determination.

Finally, I conclude that the ALJ was correct to question the claimant's credibility. At the hearing, Plaintiff testified that he could lift nothing at all, except perhaps a "can of soup." This is a remarkable statement from a man in his thirties who stands six-foot-three and weighs more than 300 pounds, and who takes no medication nor receives any treatment for such an allegedly disabling condition. There was nothing else in the record to support such a dramatic claim, and in fact the ALJ noted that Plaintiff described daily activities such as cooking, doing laundry, going to bars, shopping and using a snowblower, all of which involve at least some amount of force. (Tr. 43.) He also expressed a desire to open a convenience store, which would be inconsistent with the notion that he could barely even lift a can of soup. A consultant physician concluded that he could lift 50 pounds. (Tr. 254, 259.) The record also reflects that he gave inconsistent answers in filling out questionnaires about his ability to walk and stand. (Tr. 265.) These discrepancies support the ALJ's conclusion that the Plaintiff's testimony was not fully credible.

4

In sum, there was nothing in the record suggesting that Plaintiff's neck or back pain was disabling. No doctors imposed any restrictions that would impact his ability to do at least light (or certainly sedentary) work. The ALJ excluded jobs that involve hazards, driving, climbing ladders, scaffolds, etc. As for Plaintiff's heart arrhythmia, that had either cleared up completely or had become much less problematic since beginning medication. On the mental side, he evidenced depression and a lack of motivation, as well as issues that made it difficult to interact with the public. The ALJ's residual functional capacity finding accounted for this, limiting his potential work accordingly (no contact with the public, only occasional contact with supervisors, etc.) (Tr. 41.) There was almost nothing in the record to support a conclusion that Plaintiff would be unable to hold any job due to his mental health issues. I conclude, based on the above, that the ALJ's decision denying benefits was supported by substantial evidence.

The decision of the Commissioner is **AFFIRMED**.

Dated this   25th   day of July, 2012.

       s/ William C. Griesbach
       William C. Griesbach
       United States District Judge